UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHOBANI, LLC,

        Plaintiff,

    -v-                                3:16-CV-30

THE DANNON COMPANY, INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE DANNON COMPANY, INC.,

        Counter-Claimant,

    -v-

CHOBANI, LLC,

        Counter-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

FOLEY, HOAG LAW FIRM                JULIA HUSTON, ESQ.
Attorneys for Plaintiff                     DAVID A. KLUFT, ESQ.
155 Seaport Boulevard                  ANTHONY E. RUFO, ESQ.
Boston, MA 02210

HARRIS, BEACH LAW FIRM            DOUGLAS A. FOSS, ESQ.
Attorneys for Plaintiff                     SVETLANA K. IVY, ESQ.
99 Garnsey Road
Pittsford, NY 13534

VENABLE LLP                                  RANDALL K. MILLER, ESQ.
Attorneys for Defendant              MARCELLA BALLARD, ESQ.
8010 Towers Crescent Drive, Suite 300    ANGEL A. GARGANTA, ESQ.
Tysons Corner, VA 22182                MICHAEL C. HARTMERE, ESQ.

SCOLARO, SHULMAN LAW FIRM
Attorneys for Defendant
507 Plum Street, Suit 300
Syracuse, NY 13204

CHAIM J. JAFFE, ESQ.

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

On January 29, 2016, a Memorandum–Decision & Order (the "January 29 MDO") issued granting a request by The Dannon Company, Inc. ("Dannon") to preliminarily enjoin Chobani, LLC ("Chobani") from making certain advertising claims directed at the sweetener used in Dannon's yogurt products. Chobani, LLC v. The Dannon Company, Inc., –F. Supp. 3d–, 2016 WL 369364 (N.D.N.Y. Jan. 29, 2016) (concluding, inter alia, that Dannon established a likelihood of success on the merits of its claim for false advertising under the Lanham Act). Chobani has since appealed from this order. See 28 U.S.C. § 1292(a)(1).

Chobani has also moved for partial reconsideration of the January 29 MDO. That motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. DISCUSSION[1]

Chobani's motion, brought pursuant to Federal Rule of Civil Procedure ("Rule") 59, seeks modification, elimination, or clarification of Part 2(d) of the preliminary injunction order memorialized in the January 29 MDO. According to Chobani, that portion of the order

---

[1] The parties' familiarity with the factual background in this matter is presumed and will not be repeated here.

- 2 -

"restrains and enjoins an overly broad swath of speech by Chobani, including both lawful speech and hypothetical future speech about matters that were not [the] subject of Dannon's motion and on which the Court heard no evidence."

Rule 59(e), read in conjunction with Rule 54(a), provides for the alteration or amendment of a "judgment"; that is, "any order from which an appeal lies." FED. R. CIV. P. 54(a), 59(e); American ORT, Inc. v. ORT Israel, 2009 WL 233950, at *2 n. 2 (S.D.N.Y. Jan. 22, 2009) (concluding Rule 59(e) is proper procedural vehicle for seeking modification of preliminary injunction because it is an appealable interlocutory order).

Even in this context, a party seeking such relief "must show an intervening change in controlling law, the availability of previously unavailable evidence, or the need to correct a clear error of law or prevent manifest injustice[.]" Town of Halfmoon v. Gen. Elec. Co., 2015 WL 6872308, at *1 (N.D.N.Y. Nov. 9, 2015) (citation omitted); Country Club Assocs. v. Shaw's Supermkts., Inc., 643 F. Supp. 2d 243, 246 (D. Conn. 2009) (noting motions to alter or amend a judgment are subject to same standard as motion for reconsideration); see also PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC, 2015 WL 58388, at *1 & n. 2 (N.D.N.Y. Jan. 5, 2015) (Sharpe, C.J.) (applying reconsideration standard to party's motion to amend preliminary injunction).

Here, Chobani contends reconsideration of Part 2(d) of the preliminary injunction order is warranted to correct a clear error of law or prevent manifest injustice. This portion of the order specifically prohibits Chobani from disseminating the following claims in its marketing and advertising as they relate to Dannon products:

> i. Dannon products, including Dannon Light & Fit Greek, contain chlorine and Chobani products, including Chobani Simply 100 Greek, do not;

> ii. Dannon products, including Dannon Light & Fit Greek, are unhealthy because they contain chlorine and Chobani products, including Chobani Simply 100 Greek, are healthy because they do not contain chlorine;
>
> iii. Dannon products, including Dannon Light & Fit Greek, contain pool chlorine, a dangerous chemical used to clean swimming pools;
>
> iv. Sucralose is bad or unsafe for consumers;
>
> v. Dannon products, including Dannon Light & Fit Greek, are unsafe, harmful, and/or unhealthy; and
>
> vi. Use of the term "no bad stuff" as it relates to Dannon products, including Dannon Light & Fit Greek;

Chobani, LLC, 2016 WL 369364, at *12.

According to Chobani, these limitations place it at a competitive disadvantage because it completely precludes usage of the phrase "no bad stuff" in relation to Dannon products regardless of whether or not a safety message is at issue. Indeed, Chobani's memorandum goes on—for six pages, in fact—to point out instances where its competitors in the industry use "nearly identical puffery."

Generally speaking, an order granting injunctive relief must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d)(1). As the Second Circuit has explained, "[i]njunctive relief should be narrowly tailored to fit specific legal violations," Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 50 (2d Cir. 1996), and courts should therefore "mould each decree to the necessities of the particular case." Forschner Grp., Inc. v. Arrow Trading Co., Inc., 124 F.3d 402, 406 (2d Cir. 1997) (citations omitted).

First, insofar as Chobani appears to be attempting to re-litigate the permissibility of using the phrase "no bad stuff" as part of the particular sweetener comparison advertisements discussed in detail in the January 29 MDO, that attempt is of course rejected as improperly made on reconsideration. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Second, each of the examples cited in Chobani's brief is actually irrelevant to the particular factual circumstances of this case, since none of these examples are of specific comparative advertisements made in the context of product safety. As the January 29 MDO explained, the phrase "no bad stuff," standing alone or at the very least in the absence of a specific comparison to the safety of a direct competitor's product, may very well amount to non-actionable puffery. Chobani, LLC, 2016 WL 369364, at *8. But that was decidedly not the context in which the language was used in the advertisements at issue here.

As the January 29 MDO further explained, a statement about something being "bad" or "bad stuff" can take on a specific, non-puffing meaning when connected to an express or implied factual assertion about a specific competitor's product. Chobani, LLC, 2016 WL 369364, at *8. This is especially so where, as here, that kind of "negative phrasing" was employed "in connection with other statements and images that paint[ed] Dannon's products as a safety risk because they contain sucralose." Id.

To the extent Chobani is seeking what amounts to an advisory opinion on the permissibility of some counterfactual usage scenario, that request must be declined. Indeed, as Dannon points out, Chobani has in fact continued to use the phrase "no bad stuff" as part of other advertising efforts that do not include product safety comparison claims directed at

specific competitors. See Ballard Decl., Exs. A & B, ECF No. 63-1 (attaching instances of usage that post-date the preliminary injunction order memorialized in the January 29 MDO). Notably, this usage has not drawn any objection by Dannon. Nor should it.

Finally, and particularly in light of the distinction just reiterated above, Chobani's claim that Part 2(d) of the preliminary injunction order is overly broad is only persuasive if one reads that portion of the order in a complete vacuum. The twenty-five pages of discussion set forth in the January 29 MDO were not written gratuitously—Rule 65 explicitly requires that an order granting injunctive relief "state the reasons why it issued" as well as "describe in reasonable detail . . . the acts restrained." FED. R. CIV. P. 65(d)(1).

As relevant here, Parts 2(a)-(c) of the preliminary injunction order restrain Chobani from transmitting the "Commercial," the "Print Ad," and the "Digital Content," three terms that reference specific advertisements described in the January 29 MDO. Chobani, LLC, 2016 WL 369364, at *2 (relating these terms to particular elements of Chobani's Simply 100 advertising campaign). The details of each of these advertisements were submitted as part of briefing on the underlying motion and, of course, form the basis for the underlying dispute between the parties.

Beyond identifying these three specific advertisements, Part 2(d)(i)-(vi) clearly reflects the further goal of fashioning preliminary relief that adequately precludes Chobani from creating other advertisements that, while perhaps not falling neatly into the descriptions of the specific advertisements set forth in Parts 2(a)-(c), might nevertheless employ the same or a similar combination of words, images, and phrases in a slightly different manner in an effort to communicate the same impermissible message—that Dannon's products containing sucralose are a safety risk. Chobani, LLC, 2016 WL 369364, at *8.

specific competitors. See Ballard Decl., Exs. A & B, ECF No. 63-1 (attaching instances of usage that post-date the preliminary injunction order memorialized in the January 29 MDO). Notably, this usage has not drawn any objection by Dannon. Nor should it.

Finally, and particularly in light of the distinction just reiterated above, Chobani's claim that Part 2(d) of the preliminary injunction order is overly broad is only persuasive if one reads that portion of the order in a complete vacuum. The twenty-five pages of discussion set forth in the January 29 MDO were not written gratuitously—Rule 65 explicitly requires that an order granting injunctive relief "state the reasons why it issued" as well as "describe in reasonable detail . . . the acts restrained." FED. R. CIV. P. 65(d)(1).

As relevant here, Parts 2(a)-(c) of the preliminary injunction order restrain Chobani from transmitting the "Commercial," the "Print Ad," and the "Digital Content," three terms that reference specific advertisements described in the January 29 MDO. Chobani, LLC, 2016 WL 369364, at *2 (relating these terms to particular elements of Chobani's Simply 100 advertising campaign). The details of each of these advertisements were submitted as part of briefing on the underlying motion and, of course, form the basis for the underlying dispute between the parties.

Beyond identifying these three specific advertisements, Part 2(d)(i)-(vi) clearly reflects the further goal of fashioning preliminary relief that adequately precludes Chobani from creating other advertisements that, while perhaps not falling neatly into the descriptions of the specific advertisements set forth in Parts 2(a)-(c), might nevertheless employ the same or a similar combination of words, images, and phrases in a slightly different manner in an effort to communicate the same impermissible message—that Dannon's products containing sucralose are a safety risk. Chobani, LLC, 2016 WL 369364, at *8.

In other words, Part 2(d), properly considered in the context of "the reasons why it issued," explains "in reasonable detail" what is prohibited. More importantly, it also draws a reasonable boundary just beyond the three specific advertisements identified in Part 2(a)-(c) that is intended to prevent subversion of the January 29 MDO's preliminary injunction order. See Forschner Grp., Inc., 124 F.3d at 406 ("A district court has a wide range of discretion in framing an injunction it deems reasonable to prevent wrongful conduct."); cf. N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010) (noting in Lanham Act trademark infringement case that "the Second Circuit has affirmed the application of the 'safe distance' rule in the preliminary injunction context").

To be sure, it is possible to hypothesize a usage of the phrase "no bad stuff" (1) in combination with other images or phrases that (2) relates to Dannon's products yet (3) does not convey an express or implied safety message about sucralose. Indeed, Chobani's memorandum attempts to do just that.[2] But Rule 65(d) "does not require the district court to 'predict exactly what [the enjoined party] will think of next' or to describe all possible, permissible future commercials that [the enjoined party] may produce involving [its competitor's products]." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 241 (2d Cir. 2001). Should any of Chobani's proffered hypotheticals come to pass, the preliminary injunction may be revised appropriately. N.Y.C. Triathlon, LLC, 704 F. Supp. 2d at 328 (noting district court retains "equitable discretion" to revise preliminary injunction order as necessary).

---

[2] For example, Chobani's reply brief laments that Part 2(d) of the order would preclude Chobani from including the phrase "no bad stuff" as part of a hypothetical comparative advertisement regarding Dannon's ongoing use of the ingredient carmine.

## III. CONCLUSION

The preliminary injunction order memorialized in the January 29 MDO restrains Chobani from disseminating advertisements that portray Dannon's products as unsafe to consume. Chobani's assertion that Part 2(d) of this order is overly broad or impermissibly vague fails to warrant reconsideration. Accordingly, Chobani's motion will be denied.

Therefore, it is

ORDERED that

Chobani's motion for reconsideration is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: April 22, 2016
      Utica, New York.